IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STRAIGHT LINE INDUSTRIAL SERVICES, INC.,** § | | |
| Plaintiff § | | |
| § | | |
| vs. § | **CIVIL ACTION NO. 4:25-cv-05175** | |
| § | | |
| **INSULTHERM INC.** § | **JURY TRIAL DEMANDED** | |
| Defendant § | | |

## ORIGINAL COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, UNFAIR COMPETITION, VIOLATIONS OF ANTITRUST LAW, AND DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT

The Plaintiff Straight Line Industrial Services, Inc. ("SLIS" or "Plaintiff") files this Original Complaint against Defendant, Insultherm ("Insultherm" or "Defendant"), for preliminary and permanent injunctive relief and monetary damages, alleging the following:

### NATURE OF THE CASE

1.      This action arises from Defendant Insultherm's wrongful acquisition and use of Plaintiff SLIS's confidential bid proposal to Marathon Oil/Gas for replacement of coke drum external thermal insulation panels at a Marathon refinery in Illinois; Insultherm's immediate, unsubstantiated patent-infringement threats aimed at SLIS's identified bid and customer; and Insultherm's exclusionary and deceptive conduct intended to chill SLIS's competitive offering.

2. SLIS seeks: (a) damages and injunctive relief for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"), and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 et seq. ("TUTSA"); (b) relief for unfair competition, including false association/false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and Texas common law (in the alternative and to the extent not preempted); (c) relief for violations of the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code § 15.05; (d) relief for tortious interference with prospective business relations under Texas law; and (e) a declaratory judgment under 28 U.S.C. §§ 2201–2202 that SLIS's proposed insulated panels do not infringe U.S. Patent No. 10,323,190 ("the '190 patent") or U.S. Patent No. 11,034,890 ("the '890 patent"). Attached hereto as Exhibit 1 and 2, respectively.

## THE PARTIES

3. Plaintiff SLIS is a business entity organized under the laws of a state to be determined with its principal place of business in South Houston, Texas. SLIS designs, supplies, and competes in external thermal insulation panel solutions for industrial applications, including refinery coke drum insulation.

4. Defendant Insultherm is a business entity organized under the laws of a state to be determined with its principal place of business at 701 S. 16th Street, LaPorte, Texas. Upon information and belief, Insultherm regularly conducts business in Texas, sells and offers products/services in and around Texas, directs communications and enforcement activities into Texas, and has committed tortious acts in whole or in part in Texas giving rise to this action.

## JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because SLIS asserts claims under the DTSA, 18 U.S.C. § 1836, the Lanham Act, 15 U.S.C. § 1125(a), and seeks a declaratory judgment concerning non-infringement of U.S. patents under 28 U.S.C. §§ 2201–2202.

6. This Court has jurisdiction under 28 U.S.C. § 1338(a) because this action relates to patents and unfair competition claims joined with the patent matters.

7. This Court has supplemental jurisdiction over SLIS's state-law claims under 28 U.S.C. § 1367 because they arise from the same case or controversy and the same nucleus of operative facts as the federal claims.

8. This Court has personal jurisdiction over Insultherm because Insultherm has purposefully availed itself of the privilege of conducting activities within Texas. Insultherm's acts include directing patent-enforcement threats and other communications into Texas aimed at SLIS's Texas-based business and relationships and committing tortious acts causing injury in Texas.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Insultherm is subject to the Court's personal jurisdiction with respect to this action. To the extent applicable, venue is also proper under 28 U.S.C. § 1391(c).

## FACTUAL ALLEGATIONS

10. SLIS and Insultherm are direct competitors in the market for external thermal insulation panel solutions for industrial applications, including refinery coke drum insulation.

11. On October 20, 2025, SLIS submitted a confidential bid proposal to Marathon Oil/Gas ("Marathon") to replace coke drum external thermal insulation panels at a Marathon refinery in Illinois. SLIS's proposal offered the replacement of insulated panels only and did not include the installation of additional systems or components beyond the replacement panels.

12. SLIS's bid materials contained confidential, proprietary, and commercially sensitive information, including pricing, scope (limited to insulated panels), technical specifications, design details, and bid strategy. The compilation of these elements derives independent economic value from not being generally known or readily ascertainable by proper means.

13. There was an implied understanding and customary procurement expectation between SLIS and Marathon that bids submitted to Marathon would be treated as confidential and not shared with competitors. SLIS took reasonable measures to maintain the secrecy of its proposal, including limiting access, and marking/providing the proposal subject to confidentiality.

14. One day after SLIS submitted its proposal to Marathon, Insultherm obtained a copy of SLIS's confidential bid. Insultherm had no authorization from SLIS to access, possess, or use SLIS's bid.

15. Upon information and belief, Insultherm acquired SLIS's bid through improper means, including by inducing breach of confidentiality duties owed to SLIS, breach of a duty to maintain secrecy, or other wrongful acts inconsistent with accepted procurement practices and confidentiality obligations.

16. The day after SLIS submitted its proposal to Marathon -- on October 21, 2025 -- Insultherm sent SLIS a cease-and-desist/notice of patent infringement alleging that SLIS's proposed insulated panels infringe their '190 patent. Insultherm identified patent claims 1, 2, 4, 7, 9, 14, 16 and 20 of the '190 patent, but did not provide a claim chart nor include any technical basis supporting its allegation.

17. Insultherm's communication targeted SLIS's identified, live bid activity for Marathon and was overtly timed to interfere with SLIS's prospective business relations. Insultherm's communication was, at the time sent, objectively baseless and in bad faith.

18. Insultherm's communication conveyed to Marathon and/or was intended to convey to Marathon that SLIS's proposed panels infringed Insultherm's patent and therefore could not be lawfully procured from SLIS without Insultherm's authorization or license.

19. SLIS does not infringe the '190 patent nor the '890 patent, and SLIS has the present intent and capability to supply insulated panels for the Marathon project and other projects, same as SLIS has done for over 20 years -- since 2004.

20. Insultherm's actions were intended to harass and intimidate SLIS, chill SLIS's competitive offering, and unfairly interfere with SLIS's business and prospective relationships. Insultherm's conduct has created immediate and ongoing harm to SLIS's competitive position, reputation, and opportunities.

21. As of filing, SLIS has not been informed of a formal award decision by Marathon that links Insultherm's notice to a specific lost award. However, the timing, context, and bid-targeted nature

of Insultherm's actions have caused and threaten to cause procurement hesitancy, delay, increased costs, and diversion of business away from SLIS.

22. An actual, immediate, and real controversy exists between the parties concerning SLIS's right to proceed with the identified insulated panel offerings free from claims of infringement of the '190 and '890 patents. Insultherm's conduct has placed SLIS under a cloud of alleged illegality and has created a reasonable apprehension of suit.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
(Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.)

23. SLIS incorporates paragraphs 1–22.

24. SLIS owns trade secrets as defined in 18 U.S.C. § 1839(3), including confidential bid contents, pricing, technical specifications, scope, design information, and bid strategy for the Marathon project and related offerings. These trade secrets relate to products or services used in or intended for use in interstate commerce.

25. SLIS took reasonable measures to maintain the secrecy of its trade secrets.

26. SLIS's trade secrets derive independent economic value from not being generally known or readily ascertainable by proper means by competitors.

27. Insultherm misappropriated SLIS's trade secrets by acquiring them through improper means, including inducing or exploiting a breach of a duty to maintain secrecy, theft, or other wrongful acquisition, and by using and/or disclosing such trade secrets without consent.

28. Insultherm used SLIS's trade secrets by deploying the confidential bid information to target SLIS's identified activity and interfere with SLIS's customer and prospective business.

29. Insultherm's misappropriation was willful and malicious.

30. SLIS has suffered and will continue to suffer actual losses and damages as a result of Insultherm's misappropriation, and Insultherm has been unjustly enriched.

31. SLIS is entitled to injunctive relief, damages (including unjust enrichment or a reasonable royalty), exemplary damages for willful and malicious misappropriation, attorneys' fees, and all other relief available under the DTSA.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS
### (Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.)

32. SLIS incorporates paragraphs 1–31.

33. SLIS's confidential bid materials and related technical and commercial information constitute trade secrets under TUTSA.

34. Insultherm acquired, used, and/or disclosed SLIS's trade secrets by improper means and without consent.

35. Insultherm's misappropriation was willful and malicious.

36. SLIS has suffered and will continue to suffer irreparable harm, actual damages, and unjust enrichment. Monetary damages alone are inadequate.

37. SLIS is entitled to injunctive relief, damages (including unjust enrichment or reasonable royalty), exemplary damages up to two times compensatory damages, attorneys' fees, and all other relief available under TUTSA.

## COUNT III
## UNFAIR COMPETITION
### (Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B))

38. SLIS incorporates paragraphs 1–37.

39. Insultherm, in commercial advertising and promotion and in interstate commerce, made false and/or misleading statements of fact by asserting, without adequate basis and in bad faith, that SLIS's identified proposed insulated panels infringed Insultherm's patent rights, implying that SLIS's products were unauthorized or must be sourced through or licensed by Insultherm.

40. These statements were directed to SLIS and, upon information and belief, to Marathon and/or intended for Marathon's consideration in the procurement process.

41. The statements are false or misleading, material to purchasing decisions, and likely to cause confusion or deception as to the affiliation, connection, authorization, or commercial source of SLIS's goods and services.

42. Insultherm's conduct has proximately caused, and will continue to cause, SLIS commercial injury, including lost sales opportunities, reputational harm, diversion of business, and increased costs.

43. SLIS is entitled to injunctive relief, monetary damages, correction of false statements, disgorgement of profits, costs, and attorneys' fees to the extent permitted by law.

## COUNT IV
## UNFAIR COMPETITION
**(Texas Common Law; pled in the alternative and to the extent not preempted)**

44. SLIS incorporates paragraphs 1–43.

45. Insultherm engaged in unfair competition, including but not limited to misappropriation-based unfair competition and passing off/false association, by misappropriating SLIS's confidential information and leveraging false and misleading patent assertions to damage SLIS's business.

46. Insultherm's actions were willful, malicious, and undertaken to obtain an unfair competitive advantage.

47. SLIS has suffered damages and is entitled to injunctive relief and all other appropriate remedies.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
### (Texas Law)

48. SLIS incorporates paragraphs 1–47.

49. A reasonable probability existed that SLIS would enter into a contractual relationship with Marathon regarding the identified project.

50. Insultherm engaged in independently tortious and wrongful conduct—including misappropriation of trade secrets in violation of DTSA/TUTSA and unfair competition under the Lanham Act and Texas law—to interfere with that relationship.

51. Insultherm acted with the conscious desire to prevent SLIS from entering into the relationship or with knowledge that interference was certain or substantially certain to occur.

52. Insultherm's interference proximately caused actual damage or loss to SLIS.

53. SLIS is entitled to damages, injunctive relief, and all other appropriate remedies.

## COUNT VI
## VIOLATIONS OF THE TEXAS FREE ENTERPRISE AND ANTITRUST ACT
### (Tex. Bus. & Com. Code § 15.05)

54. SLIS incorporates paragraphs 1–53.

55. The relevant product market includes external thermal insulation panel solutions for refinery coke drums and closely substitutable industrial coke drum insulation solutions; the relevant geographic market includes at least the United States and/or the Texas energy corridor and Gulf Coast regions, characterized by limited qualified suppliers, high switching and qualification barriers, customer-specific engineering requirements, and procurement concentration.

56. Upon information and belief, Insultherm possesses, or there is a dangerous probability that it could obtain, monopoly power in the relevant market, including substantial market shares, control over pricing and output, and the ability to exclude rivals through strategic patent-enforcement communications timed to live bids.

57. Insultherm willfully engaged in exclusionary conduct by sending objectively baseless and bad-faith patent-infringement threats immediately after misappropriating SLIS's confidential bid, with the purpose and effect of deterring Marathon and other customers from awarding business to SLIS, raising SLIS's costs, and foreclosing competition.

58. To the extent Insultherm already possesses monopoly power, Insultherm willfully maintained that power through the exclusionary conduct described above in violation of § 15.05(b).

59. Alternatively, Insultherm specifically intended to monopolize, engaged in exclusionary conduct, and there is a dangerous probability of achieving monopoly power in violation of § 15.05(b).

60. To the extent discovery reveals concerted action, Insultherm combined or conspired with others, known and unknown, to unreasonably restrain trade in violation of § 15.05(a).

61. SLIS suffered antitrust injury, including lost or jeopardized business opportunities, price erosion, reputational harm, and impediments to market entry or expansion.

62. SLIS is entitled to injunctive relief, damages (including treble damages where authorized), costs, and attorneys' fees under the Texas Free Enterprise and Antitrust Act.

## COUNT VII
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF
## U.S. PATENT NOS. 10,323,190 AND 11,034,890
## (28 U.S.C. §§ 2201–2202)

63. SLIS incorporates paragraphs 1–62.

64. An actual, substantial, immediate, and real controversy exists between SLIS and Insultherm concerning alleged infringement of the '190 and '890 patents by SLIS's proposed insulated panels identified in its bid to Marathon and similar offerings.

65. Insultherm's cease-and-desist/notice communicated an enforcement position against SLIS's identified activity and created a reasonable apprehension of suit. The controversy is ripe for adjudication.

66. SLIS's proposed insulated panels do not infringe any valid and enforceable claim of the '190 patent or the '890 patent, directly or indirectly, literally or under the doctrine of equivalents.

67. SLIS seeks a declaration under 28 U.S.C. § 2201 that SLIS does not infringe the '190 or '890 patents, and such further relief as is necessary or proper under § 2202.

## IRREPARABLE HARM AND NEED FOR INJUNCTIVE RELIEF

68. SLIS incorporates paragraphs 1–67.

69. Insultherm's misappropriation and unfair competition have caused, and will continue to cause, irreparable harm to SLIS, including loss of confidential information, loss of competitive advantage, loss of goodwill, and disruption of relationships that cannot be fully remedied by monetary damages.

70. The balance of equities favors injunctive relief; the public interest supports protecting trade secrets, fair competition, and accurate commercial communications.

## PRAYER FOR RELIEF

71. SLIS respectfully requests that the Court enter judgment in its favor and award the following relief:

A. On Counts I and II (DTSA and TUTSA):

    1. Preliminary and permanent injunctions enjoining Insultherm, and all persons acting in concert with it, from using, disclosing, or possessing SLIS's trade secrets and from any further misappropriation;

    2. An order requiring Insultherm to return, sequester, or destroy all SLIS confidential and trade secret information in any form, including all copies, extracts, and derivatives, and to certify compliance;

    3. Damages for SLIS's actual losses and Insultherm's unjust enrichment, or, in the alternative, a reasonable royalty;

  4. Exemplary damages for willful and malicious misappropriation as permitted by law;

  5. Attorneys' fees and costs as permitted by law.

B. On Count III (Lanham Act):

  1. Preliminary and permanent injunctions prohibiting Insultherm from disseminating false or misleading statements regarding SLIS's products and patent compliance, and requiring corrective communications to Marathon and other affected customers;

  2. Damages, including SLIS's actual damages and Insultherm's profits attributable to the violations;

  3. Costs and attorneys' fees as permitted by law.

C. On Count IV (Texas Unfair Competition, pled in the alternative):

  1. Injunctive relief;

  2. Compensatory damages, restitution, and disgorgement;

  3. Costs and attorneys' fees as permitted.

D. On Count V (Tortious Interference):

  1. Injunctive relief;

  2. Compensatory and consequential damages;

  3. Exemplary damages to the extent permitted;

  4. Costs and attorneys' fees as permitted.

E. On Count VI (Texas Antitrust):

  1. Injunctive relief to restore competition and enjoin exclusionary conduct;

  2. Damages, including treble damages where authorized by law;

  3. Costs of suit and attorneys' fees.

F. On Count VII (Declaratory Judgment of Non-Infringement):

  1. A declaration that SLIS's proposed insulated panels do not infringe any valid and enforceable claim of U.S. Patent Nos. 10,323,190 or 11,034,890;

2. Such further necessary or proper relief under 28 U.S.C. § 2202.

G. A temporary restraining order and/or preliminary injunction as appropriate, expedited discovery, and a preservation order to prevent spoliation of evidence;

H. Pre- and post-judgment interest as allowed by law;

I. All other relief, at law or in equity, to which SLIS may show itself justly entitled.

## JURY DEMAND

72. SLIS demands a trial by jury on all issues so triable.

DATED: October 29, 2025

Respectfully submitted,

/s/ *Robb Edmonds*

Robb D. Edmonds (Attorney-in-Charge)
Texas Bar No. 24029530
Email: redmonds@edmondsiplaw.com
EDMONDS & CMAIDALKA, P.C.
16850 Diana Lane, Suite 102
Houston, Texas 77058
Telephone: 281-954-6239 Direct

***ATTORNEYS FOR PLAINTIFF STRAIGHT LINE INDUSTRIAL SERVICES, INC.***